Good morning. May it please the Court. My name is Gerald Gelfand. I represent the Plaintiffs and the Pellants in this matter, the Reynolds. And the case before the Court concerns whether or not the evidence in the record provides substantial evidence by which a fact finder, jury, could point to the TPI product as being the cause of the fire and being unreasonably dangerous or not reasonably safe or defective, all synonymous under Washington law. Now, what is the status of this question of the switches themselves being defective? Do I understand correctly that both sides, experts, agree that it wasn't the switches? I don't know the extent to which I could agree with the Court that there was agreement between the experts. What I can represent to the Court is that the experts could not find a fault as of the time that the examination was made with respect to the thermostat in the thermostat, safety thermostat controls of the heater. And that's why thermodisc of Emerson was dismissed from the case, and that's why the cross-claim against them. But your problem on appeal is that you have to be able to persuade us that there's a genuine issue of material fact here. And I'm not sure what that is. What is it? That material issue of fact under Washington law, as recognized by this Court in Glantzman v. Unaroyal, is whether or not the evidence which is in the record could lead a fact finder to conclude that the heater was not reasonably safe or unreasonably dangerous. But don't heat in the standard. What's the evidence? That's repeating the standard. The evidence is as follows. May it please the Court, Judge Reimer. The facts are Mr. Lim was on scene. He inspected the home. He inspected the heater. He inspected the components. He, in his declaration, made a statement that I have done all of this and I can find no other cause for this fire, no other source of energy. To have a fire, we have to have energy. He excluded all other probable causes in the vicinity. Those are the facts in the record. Now, the Court said, because Mr. Reynolds said that he cleaned the heater, that fall that there was no way there could have been combustion. But we respectfully disagree with the trial court in that. Don't you have an obligation, if you're suing this particular manufacturer on the allegation that this heater malfunctioned or has a latent defect, whatever, don't you have to identify what that defect is? Absolutely not, Your Honor. All of the Washington decisions say we have no obligation to show what the precise defect is. All we have to show is that the product was not reasonably safe or unreasonably dangerous, and that is sufficient under Washington law to show the plaintiff's right to recover. What made it unreasonably safe? What made it not reasonably safe was the fact that this was being used as intended in the home and it caused the home to burn down. Well, but, look, Mr. Lammett currently looked at every heater in the house. There's no evidence that they were treated differently. This one was treated differently from any of the others. He found no dust, no combustible material, no mechanism in the other heaters that would have caused them to heat too much and not be able to control themselves. There's undisputed evidence that this thing was triple redundant in terms of heat mechanisms. So what's the – what is it? Judge Reimer, you're asking for an identification of the precise defect, and we cannot provide that. Well, I'm just saying what made it unsafe. I mean, I – The fact that it caused the house to burn down and that the ordinary consumer would not expect that. There's a very interesting statement. I think we're looking for nexus here. Okay? But the nexus is the energy being supplied to the heater and the heater was on. The exclusion of other probable causes meets the test set forth by the Ninth Circuit and the Washington courts, and that's been clearly made. And a reasonable consumer would not expect a heater to ignite their home. It goes beyond the reasonable expectations of the ordinary Washington consumer, which parallels the Idaho consumer. In the supplemental excerpts of record, a statement is made at page 07 concerning another model heater, and Mr. – the TPI engineer's evaluation of this, and on this page 7, in response to the – in reply to the motion for summary judgment, it says, with respect to this other model, it was determined that the fire was caused by placing a chair in front of the heater for a prolonged period of time. These aren't just stand-alone heaters. They're installed as heat ducts in the wall. To the ordinary consumer, they look like a heat duct being fed by a furnace, but they're not. They're a high-energy source. I do, Your Honor. Thank you. We'll hear from the manufacturer. Mr. Goslin. Goslin. Thank you, Your Honor. May it please the Court. My name is Timothy Goslin. I'm here for the Appellee TPI Corporation. There was a question asked regarding the status of the high-limit switches and whether there was agreement between the experts as to that. The testimony came from two individuals, one, the defense expert, Ray Pepe, who observed or who examined the high-limit switches and found no defect or abnormality in those. The second testimony or evidence on that issue came from the plaintiff's expert, Mr. Lean, who indicated that he had examined the high-limit switches, compared them with others in other heaters, and then left it at that. He made no statement other than saying, we cannot determine what the precise nature of the cause was. That's where he left it. He made no conclusion about the high-limit switches whatsoever. Mr. Goslin, under Washington law, if you can eliminate any other sources, if there's no other source, as the Reynolds counsel argues, if there's no other source of energy here other than the heater, what else do they have to show under Washington law? They still have to show some possibility that the product was defective. It cannot, it simply cannot be the rule that the last one in the chain, the last item in the chain of examination is automatically presumed to be defective because the first items, the first group of items have been established as not defective. Is there any other explanation for how the fire started? There is. The only explanation that there is is that fire was coming into the heater from an outside source and being circulated through, but not the cause itself. And what might have been the source of the outside fire? We have no idea whatsoever. Could this have been caused by kids throwing paper wads into the heater or a defect in the electrical wiring? I can tell you that our investigation was directed to the question of the box fan and the cord. As you may recall from the facts, there was a box fan that was sitting in front of this wall-mounted heater. That box fan was recovered, but a portion of the electrical cord was missing. Our investigation was directed primarily towards that box fan, and we do not believe that that was conclusively ruled out, as Mr. Liem suggests. That would have presented an issue of fact if the issue came down to did the heater cause the fire or did the box fan cause the fire. There would have been dispute. But the first question is whether there is sufficient evidence that the heater caused the fire to begin with. And your question, Your Honor, was simply by ruling out other causes, do you rule in or create an issue of fact that the heater caused the fire? And I'm not aware of any case that relied solely on that fact, solely on the fact that other causes have been ruled out. Now, there are certainly cases where other ‑‑ excuse me, let me restate that. The evidence that other causes have been ruled out is certainly relevant evidence tending in conjunction with other evidence that could be used to establish a fault or failure in a given product. But my point is that it cannot simply be that the last item in this chain of investigation presumed if there is no evidence that can support a failure of the heater itself. And that's what's lacking here. There is absolutely no evidence that the heater failed in any respect. Mr. Gelfand says the heater is unsafe because it caused the house to burn down. That begs the question because it assumes that the heater caused the fire. And that's the evidence that is lacking here. There is nothing indicating that this heater could function in a way or misfunction, even malfunction, in a way that could result in the sequence of events that is testified to having been observed. We have to accept Mrs. Reynolds' testimony and indeed its plaintiff's theory that fire emanated, started in this heater itself. Fire requires an ignition source and it requires a combustible material. There is no evidence of combustible material. Even if you assume some kind of failure, and there's no evidence of a failure, but even if you assume that, there is no evidence of combustible material. And it's not for lack of opportunity. Mr. Lean certainly could have examined all of the other heaters that were in this house and determined whether there was lint buildup or some kind of combustible material in those, but he makes no mention of that. He does note that he examined those, makes no mention of finding any kind of combustible material in any of those other heaters. There has to be some consistency. There has to be some reasonableness to the explanation that is attributed to the fault. That is, there has to be some basis for the plaintiff to say this object, this heater, could have started this fire. And in this circumstance, there is none.  Thank you, Your Honor. Mr. Gelfand, you have some reserve time. The record shows that there was more than ample time to have a lint buildup, which provides the combustibility required to cause ignition. With respect to other heaters, it presupposes that all the heaters have the same problem or that are exposed to the same level of dirt or lint buildup, which is not necessarily so. The answer to the questions posed by the Court is set forth in Washington law. Recently, in 2000, Panada, it says that if the product did not perform in keeping with the reasonable expectations of the user, if the product failed under conditions concerning which an average consumer of the product could have fairly defined expectations, then the jury would have a basis for making an informed judgment upon the existence of a defect. I respectfully disagree with opposing counsel in that we have excluded the other energy sources. That is a foundational requirement under Washington law and under Federal law. As it interprets State laws, we have satisfied that requirement through the testimony of Mr. Lint. That's unequivocal in his declaration. I have examined other causes, he said, and I have excluded other causes. The argument as presented to the trial court and is continuing to be presented is begging the question of whether or not a plaintiff has a duty of identifying a specific defect. And that has been answered in the negative for the past 20-plus years. And consequently, the plaintiff has provided substantial evidence upon which a fact finder can determine that the experts have excluded other sources of ignition in this area. The eyewitnesses, which are rare in this field, have seen the fire coming from the heater. That's very persuasive of this not being within the realm of reasonable expectations of the consumer. Thank you. Thank you, counsel. The case just argued will be submitted for decision. And we will hear arguments Ripley v. Barnhart. Thank you.
judges: O'scannlain, Rymer, Bybee